## Nationwide Mutual Insurance Company v. Christina Pasion
### (14205)

Peters, C. J., Shea, Glass, Covello and F. X. Hennessy, Js.

Argued April 24—decision released July 30, 1991

*Carl E. Cella,* with whom was *Michael O'Conner,* for the appellant (plaintiff).

*Morton W. Appleton,* with whom was *Peter M. Appleton,* for the appellee (defendant).

F. X. HENNESSY, J. The main issue in this appeal is whether a written request to reduce uninsured motorist coverage by one of two named insureds on an automobile liability insurance policy is sufficient to satisfy the writing required by General Statutes (Rev. to 1989) § 38-175c (a) (2).[1] The plaintiff, Nationwide Mutual Insurance Company (Nationwide), appealed the judgment of the Superior Court confirming an uninsured motorist insurance award in favor of the defendant, Christina Pasion, to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and affirm the trial court's judgment.

The facts are as follows. On January 4, 1989, Pasion was injured in an automobile accident while a passenger in a car owned by Carlos and Alexis Londono and operated by Alexis Londono, whose negligence caused the accident. That car and another owned by the Londonos

---

[1] General Statutes (Rev. to 1989) § 38-175c (a) (2) provides in pertinent part: "Notwithstanding any provision of this section to the contrary, each [automobile liability insurance] policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount . . . . Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured."

This section has been transferred to General Statutes § 38a-336 (a) (2). We refer to the 1989 revision throughout this opinion.

were insured under one policy applied for and purchased by Carlos Londono from Nationwide.[2] Under the policy, which listed both Carlos and Alexis Londono as named insureds, the available liability coverage was $100,000. At the time he purchased the policy, Carlos Londono alone authorized in writing that the amount of uninsured motorist coverage be reduced to $50,000/100,000 on each car.

Pasion, who was paid $100,000 by Nationwide under the liability portion of the policy, but whose injuries were in excess of that amount, sought arbitration to determine the amount of uninsured motorist coverage available under the policy.[3] Pasion claimed that because Carlos and Alexis Londono were the named insureds on the policy, the written request by Carlos Londono alone to reduce the uninsured motorist limits was insufficient to reduce that coverage to an amount less than the liability coverage. She therefore claimed that she was entitled to an uninsured motorist award of $100,000 (because two cars at $100,000 equal $200,000, less the liability payment of $100,000). Nationwide claimed that the written request for reduced uninsured motorist limits was valid and that Pasion was therefore not entitled to any additional award (because two cars at $50,000 equal $100,000, less the liability payment of $100,000).

A majority of the arbitration panel found that the term "insured" as used in the language "unless the insured requests in writing a lesser amount" in § 38-175c (a) (2) means all named insureds, and that,

---

[2] Although the record discloses that the car involved in the accident is owned by Alexis and Carlos Londono, it is not clear whether the second car is jointly owned.

[3] "[S]tatutory provisions relating expressly to uninsured motorist coverage apply also to underinsured motorists." *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 628, 569 A.2d 1105 (1990).

absent the signature of Alexis Londono on the requested reduction of coverage, the writing requirement of that subdivision had not been satisfied. The panel therefore awarded Pasion $100,000.

Nationwide moved to correct or vacate the award and Pasion moved to confirm the award. The trial court, *O'Neill, J.,* following a review of the law upon which the arbitrators based their decision, agreed with the interpretation of § 38-175c (a) (2) by the majority of the arbitrators and denied the motion to correct or vacate and granted the motion to confirm.

On appeal Nationwide raises two issues: (1) whether Pasion, as a third party to the insurance contract between Nationwide and the Londonos, has standing to raise the claim that the writing requirement of § 38-175c (a) (2) to reduce uninsured motorist coverage had not been satisfied because Alexis Londono failed to sign the request; and (2) whether the trial court incorrectly interpreted § 38-175c (a) (2) to require the signatures of all named insureds to request a reduction in uninsured coverage.

Nationwide's first claim, that Pasion does not have standing to challenge the validity of the reduction in uninsured motorist coverage, was not raised before the trial court and is therefore raised for the first time on appeal. While, generally, we are not bound to consider a claim that was not raised before the trial court, a challenge to the subject matter jurisdiction of a court may be raised at any time. *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 377, 568 A.2d 431 (1990). Because Nationwide's claim that Pasion lacks standing is a challenge to the subject matter jurisdiction of the trial court and this court; see *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 498 and n.4, 467 A.2d 674 (1983); we will consider the merits of that claim.

" ' "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." ' *Ardmare Construction Co.* v. *Freedman,* [supra, 501], quoting *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966)." *State* v. *Pierson,* 208 Conn. 683, 687, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989).

Nationwide does not dispute that Pasion, a passenger in the vehicle driven by Alexis Londono, was an insured under the terms of the policy. Pasion, therefore, as a third party beneficiary of the Nationwide policy purchased by Carlos Londono, had the necessary interest in the coverage available under that policy to challenge the validity of the reduction of uninsured motorist coverage.

Nationwide's second claim is that the trial court incorrectly interpreted the term "insured" as used in the clause "unless the insured requests in writing a lesser amount" in § 38-175c (a) (2) to mean all named insureds. Nationwide contends that while the term "insured" as used in that clause does refer to a named insured, the statute unambiguously requires that only the initial purchaser or applicant for the policy, not all the named insureds, be required to request in writing a reduction in uninsured coverage. Pasion, however, argues that the signatures of all the named insureds on the policy are necessary to comply with the writing requirement of § 38-175c (a) (2). The trial court agreed with Pasion, and we agree with the trial court.

Statutes are to be construed to give effect to the apparent intention of the lawmaking body; *Sanzone* v.

*Board of Police Commissioners,* 219 Conn. 179, 186, 592 A.2d 912 (1991); and where legislative intent is clear, there is no room for statutory construction. *Kelemen* v. *Rimrock Corporation,* 207 Conn. 599, 606, 542 A.2d 720 (1988). When, however, we are confronted with ambiguity in a statute, we look to " 'its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment' " to determine the legislative intent. *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982).

Nationwide contends that the term "insured" in the disputed clause is unambiguous and requires only the named insured who initially purchased or applied for the policy to request in writing a reduction in coverage. We disagree. The legislative intent of the requirement in § 38-175c (a) (2) that "the insured" request in writing a reduction in uninsured motorist coverage is not clear. That subdivision states that "[s]uch written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the *named insured,* unless changed in writing by the *insured.*" (Emphasis added.) Nationwide acknowledges that, since both the applicant for the policy and a named insured would be required to sign the application, the applicant would always become a named insured. The term "insured" as used in § 38-175c (a) (2), therefore, necessarily refers to a named insured. We are not convinced that because the legislature used the separate terms "insured" and "named insured" in § 38-175c (a) (2), its use of the term "insured" in the disputed clause is an unambiguous reference to the named insured purchasing or applying for the policy, for just as the legislature has not used the term "named insured," it has not used the terms "applicant" or "purchaser."

Because we conclude that § 38-175c (a) (2) is not unambiguous, it is appropriate to consider its legisla-

tive history. During the 1983 legislative session, the legislature passed Senate Bill 123, which added subdivision (2) to General Statutes § 38-175c (a). Senator Wayne Baker, cochairman of the Committee on Insurance and Real Estate,[4] in moving for acceptance of that committee's favorable report and passage of Senate Bill 123, stated that this provision "would require each insured who purchases more than the legally required amount of liability insurance would [sic] receive the same amount of uninsured motorist coverage. The insured would have an opportunity to waive in writing the additional uninsured motorist coverage. This change would increase the consumer's awareness of the value of low-cost uninsured motorist coverage which protects the insured and his family members. Apparently many drivers purchase $100,000.00 or more of liability coverage but leave their uninsured motorist coverage at the minimum of $20,000–$40,000. Subsection 2 . . . gives such a driver an increased amount of uninsured motorist coverage, unless he makes a conscious decision not to purchase it." 26 S. Proc., Pt. 9, 1983 Sess., p. 3055. In proceedings before the House of Representatives, Representative Gerald Noonan, in moving for passage of Senate Bill 123, stated: "Mr. Speaker, this bill . . . makes two changes in the uninsured motorists' coverage. . . . [T]he second is that an individual who purchases a liability policy . . . would be given coverage in the same amount of the policy rather than automatically receive the minimum coverage." 26 H.R. Proc., Pt. 21, 1983 Sess., p. 7437.

The apparent intent of the legislature in adopting subsection (2), as evidenced by the legislative history of Senate Bill 123, was to assure that consumers purchas-

---

[4] The statement of the legislator reporting a bill out of committee "carries particular weight and deserves careful consideration." *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 275, 524 A.2d 621 (1987).

ing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing. Despite the reference in the statements of the legislators to the purchaser, insured, consumer, driver and individual who purchases a liability policy, we conclude that to construe the term "insured" in that provision of § 38-175c (a) (2) as Nationwide urges would thwart the intent of the legislature. Although the named insureds on the policy involved in this case are husband and wife and by virtue of that personal relationship it could be assumed that Alexis Londono was both made aware of the availability of low-cost uninsured motorist coverage and acquiesced in the reduction sought by her husband, such an assumption is far from a certainty. We are even less certain that in situations where the joint owners of an automobile and named insureds on an automobile liability insurance policy are, for example, brother and sister, roommates, or friends, all of whom would be consumers, a conscious choice to reduce uninsured motorist coverage would have been made by all consumers when only one owner/named insured had signed the authorization for reduction in coverage. To permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one. See *Travelers Indemnity Co.* v. *Malec,* 215 Conn. 399, 402–403, 576 A.2d 485 (1990).

We conclude therefore that the trial court's interpretation of § 38-175c (a) (2) to require the signature of all named insureds on a written request to reduce uninsured motorist coverage was correct.

The judgment is affirmed.

In this opinion the other justices concurred.