Robert J. LAJOIE and Peter D. Mattor

v.

CONNECTICUT STATE BOARD OF LABOR RELATIONS, Edwin S. Mak, Albert J. Rioux, Henry F. Healey, Jr., Thomas G. Martin, Clifford B. Green, Andrew C. Ocif, George R. Zeeb, Ted R. Satkowski, Frank Lucca, William A. Tremont, Roger Delsin, Connecticut State Sheriffs Association, County Sheriffs Advisory Board, Ronald F. Petronella, Margaret A. Lareau, Lowell P. Weicker, Joseph H. Harper, Jr., Jay Levin, and all other Special Deputy Sheriffs as parties having a direct interest in the outcome of the declaratory judgment.

No. 2:92–CV–1035 (JAC).

United States District Court,
D. Connecticut.

Oct. 12, 1993.

Margaret J. Slez, Slez & Slez, Westport, CT, for plaintiffs.

E. Stephen Briggs, Connecticut State Bd. of Labor Relations, Wethersfield, CT, for defendants Connecticut State Bd. of Labor Relations and Margaret A. Lareau.

Stephen J. O'Neill and Michael J. Lanoue, Office of the Atty. Gen., Hartford, CT, for defendants Mak, Rioux, Healey, Martin, Green, Ocif, Zeeb, Satkowski, Lucca, Tremont, Delsin, Connecticut State Sheriffs Ass'n, and County Sheriffs Advisory Bd.

Thomas P. Clifford, Office of the Atty. Gen., Hartford, CT, for defendant Petronella.

Henry S. Cohn, Office of the Atty. Gen., Hartford, CT, for defendants Weicker and Harper.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, CT, for defendant Levin.

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

JOSÉ A. CABRANES, Chief Judge:

This action arises out of a Connecticut statute, Public Act 92–61, which prevents special deputy sheriffs from forming a labor union to represent them in collective bargaining with the State of Connecticut. The plain-

tiffs contend that Public Act 92–61 is unconstitutional, and they seek an injunction restraining the defendants from enforcing that statute. The plaintiffs also seek damages from the defendants on various grounds, including the defendants' involvement in efforts to enact Public Act 92–61.

All of the defendants in this action have filed motions to dismiss. These include: (1) the Motion to Dismiss (or in the Alternative for Summary Judgment) of defendant Lareau and defendant Connecticut State Board of Labor Relations; (2) the Motion to Dismiss of defendants Mak, Rioux, Healey, Martin, Green, Ocif, Zeeb, Satkowski, Lucca, Tremont, Delsin, Connecticut State Sheriffs Association, and County Sheriffs Advisory Board; (3) the Motion to Dismiss of defendants Weicker and Harper; (4) the Motion to Dismiss of defendant Levin; and (5) the Motion to Dismiss of defendant Petronella.

Defendant Petronella's motion to dismiss was granted on July 2, 1993, absent timely objection or response of any kind. The motions to dismiss filed by the other defendants all remain pending before the court. The court heard oral argument on these motions on June 21, 1993, following which the motions were deemed ripe for decision.

### BACKGROUND

The following facts, which are alleged in the complaint, must be accepted as true for purposes of these motions. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

The plaintiffs, who serve as special deputy sheriffs in Hartford and Fairfield counties, have attempted over the past several years to organize a labor union that would represent them in collective bargaining with the State of Connecticut. The plaintiffs encountered resistance from their supervisors, who threatened to terminate or demote them if they persisted in attempting to organize a union. The supervisors also threatened to terminate or demote the plaintiffs for refus-

ing to pay "dues" to the County Sheriffs Association, for refusing to make "donations" to the re-election campaigns of the High Sheriffs, and for refusing to contribute to the salary of a lobbyist hired by the sheriffs to represent their interests before the state legislature. Eventually, the plaintiffs collected the required number of signatures from other special deputies and, in November 1991, they filed a petition with the Connecticut State Board of Labor Relations ("Labor Board" or "Board") for certification as a collective bargaining union. In their petition, the plaintiffs asked the Labor Board to find that the special deputy sheriffs were entitled to form a labor union.

While the plaintiffs' petition for representation was pending before the Labor Board, the Connecticut General Assembly passed Public Act 92–61. This act makes chapters 66–68 of the Connecticut General Statutes inapplicable to special deputy sheriffs, and thereby excludes special deputy sheriffs from the class of state employees who are entitled to form labor unions.[1] The act was signed by defendant Weicker, the Governor of Connecticut, and became law on May 29, 1992. Four months later, on September 30, 1992, the Labor Board found that Public Act 92–61 applied to petitions that had been filed before the Act was passed; the Board therefore dismissed the plaintiffs' petition. In reaching this decision, the Board found it unnecessary to determine whether special deputy sheriffs were "employees" of the state for the purposes of SERA.

The plaintiffs commenced this action on December 22, 1992. In their amended complaint, which was filed on February 12, 1993, the plaintiffs seek the following relief: (1) a declaration that special deputy sheriffs are "employees" under SERA; (2) damages under 42 U.S.C. § 1983 against defendant Albert Rioux, the Hartford County High Sheriff, and defendants Frank Lucca and William Tremont, Hartford County Special Deputy Sheriffs, based on various threats allegedly made against plaintiff Lajoie; (3) damages

---

1. Chapter 66, Conn.Gen.Stat. § 5–152 *et seq.*, is the State Employees Retirement Act; Chapter 67, Conn.Gen.Stat. § 5–193 *et seq.*, is the State Personnel Act; and Chapter 68, Conn.Gen.Stat. § 5–270 *et seq.*, which governs collective bargaining rights, is known as the State Employees Relations Act ("SERA").

under 42 U.S.C. § 1983 against defendant Edwin Mak, Fairfield County High Sheriff, and defendant Roger Delsin, Fairfield County Special Deputy Sheriff, based on various threats allegedly made against plaintiff Mattor; (4) a declaration that Public Act 92–61 violates the Connecticut Constitution and the United States Constitution; (5) a writ of mandamus directing the Connecticut State Board of Labor Relations and its officers to re-commence their consideration of the plaintiffs' union-organizing petition;[2] (6) a declaration that Public Act 92–61 does not apply retroactively; (7) damages under 42 U.S.C. § 1985(3) against various defendants for allegedly conspiring to deprive the plaintiffs of their civil rights, based on the defendants' efforts to enact Public Law 92–61; (8) damages against defendant Lowell Weicker, the Governor of Connecticut, under 42 U.S.C. § 1986 for allegedly failing to prevent a conspiratorial wrong—namely, the enactment of Public Act 92–61; and (9) damages under 42 U.S.C. § 1983 for alleged injuries to the plaintiffs' constitutional and other legal rights as well as an injunction against the enforcement of Public Act 92–61, based on the claim that the statute's continuing application would further violate the plaintiffs' civil rights.

### DISCUSSION

The claims asserted in the plaintiff's complaint fall into three broad categories: (1) challenges to the validity and applicability of Public Act 92–61; (2) claims for damages arising out of the alleged involvement by certain defendants in the enactment of Public Act 92–61; and (3) claims for damages aris-

ing out of alleged threats by certain defendants against the plaintiffs for failing to contribute to particular political causes and for attempting to organize a union. These claims, and the defendants' motions to dismiss each of them, will be discussed in turn.

### I.

At the core of this action is the plaintiffs' effort to achieve legal recognition for a labor union that would represent special deputy sheriffs in collective bargaining with the State of Connecticut. The main obstacle to the plaintiffs' union-organizing efforts is Public Act 92–61, which provides that the Connecticut statutes authorizing employees to form labor unions do not apply to special deputy sheriffs.[3] In their amended complaint, the plaintiffs seek to overcome this obstacle in four ways: (1) Count One seeks a declaration that special deputy sheriffs are in fact "employees"—rather than "independent contractors" or "vendors"—under SERA; (2) Count Four seeks a declaration that Public Act 92–61 violates both the United States Constitution and the Connecticut Constitution; (3) Count Six seeks a declaration that Public Act 92–61 does not apply retroactively; and (4) Count Nine seeks, *inter alia*, an injunction under 42 U.S.C. § 1983 against the enforcement of Public Act 92–61.

### A.

■ Count One seeks a declaration from this court that special deputy sheriffs are "employees" under Connecticut law. The court, however, declines to exercise jurisdic-

---

**2.** In Count Five, the plaintiff sought a writ of mandamus ordering the Labor Board and its officers to continue their consideration of the plaintiffs' petition. At oral argument, however, plaintiffs' counsel agreed to withdraw the mandamus claim. *See* Transcript of Hearing (June 21, 1993), at 37. Accordingly, the defendants' motion to dismiss Count Five must be denied as moot.

**3.** Public Act 92–61, An Act Concerning Special Deputy Sheriffs, reads, in relevant part, as follows:

Section 1. In case of riot or civil commotion or reasonable apprehension thereof, or when he deems it necessary for the prevention or investigation of crime, or when needed for

attendance at court, the sheriff of any county may appoint special deputy sheriffs in such numbers as he deems necessary. Special deputy sheriffs shall be sworn to the faithful performance of their duties and, having been so sworn, shall have all the powers of the sheriff as provided by law, except as to service of civil process; and such special deputies shall continue to hold their office as long as the sheriff appointing them deems necessary but not longer than the term of his office. *Special deputy sheriffs shall not be subject to the provisions of chapters 66 to 68, inclusive.*

Section 2. This act shall take effect from its passage. Approved May 29, 1992.
(Emphasis added).

tion over this state law claim on two interrelated grounds—28 U.S.C. § 1367(c)(1)[4] and the doctrine of *Pullman* abstention.[5]

The plaintiffs may well be correct in arguing that this state law claim satisfies the "pendent jurisdiction" test of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), now codified as "supplemental jurisdiction" in 28 U.S.C. § 1367(a).[6] The plaintiffs, however, nowhere dispute the defendants' contention that this issue raises an unsettled question of state law. The plaintiffs have not brought to the court's attention—and the court is unable to find—any Connecticut state court decisions, or any Connecticut authority whatsoever, which directly addresses the question of whether special deputy sheriffs are in fact deemed "employees" for the purposes of SERA. It therefore appears that this hotly contested state law issue—which implicates vital issues of state policy—is entirely without state precedent or direction. .

This court's resolution of this important, but as yet undecided, state law question would be, at best, a prediction of subsequent state law developments—"a tentative answer which may be displaced tomorrow by a state adjudication." *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under such circumstances—and especially where a determination of this issue could possibly obviate the need of deciding the constitutionality of Public Act 92–61—the court declines to hear this claim.

The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

*Railroad Comm'n v. Pullman,* 312 U.S. at 500, 61 S.Ct. at 645.

It is worth noting that the plaintiffs are not without a suitable state forum for resolving this state law issue. The plaintiffs can present anew their claim of "employee" status to the Labor Board, or they may appeal any adverse decision of the Board to the Connecticut state courts.

In sum, even if the court is authorized by 28 U.S.C. § 1367(a) to exercise supplemental jurisdiction, the court declines to exercise that jurisdiction over the claim that special deputy sheriffs are "employees" under Connecticut state law inasmuch as that claim clearly "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Count One must therefore be dismissed, without prejudice.

### B.

 The same holds true for Count Six, which seeks a declaration that Public Act 92–61 does not apply retroactively. While the Labor Board has ruled that the statute so applies, the question has not been addressed by any Connecticut state court. It is true that there is a presumption in Connecticut law against the retroactive application of statutes, *see* Conn.Gen.Stat. § 1–1(u),[7] partic-

---

**4.** 28 U.S.C. § 1367(c)(1) provides that "district courts may decline to exercise supplemental jurisdiction ... if ... the [state law] claim raises a novel or complex issue of State law,...." This provision serves a purpose quite similar to that of *Pullman* abstention. *See* Practice Commentary to 28 U.S.C. § 1367, in the 1993 Cumulative Annual Pocket Part to Title 28 of the United States Code, at 240, 244.

**5.** This term comes from Justice Frankfurter's opinion in *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), in which the Supreme Court declined to address the constitutionality of a regulation issued by the Texas Railroad Commission prior to a determi-

nation by Texas state courts of whether that regulation complied with Texas law.

**6.** 28 U.S.C. § 1367(a) reads, in pertinent part: Except as provided in subsections (b) and (c) ..., in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

**7.** Conn.Gen.Stat. § 1–1(u) states that "[t]he passage or repeal of an act shall not affect any action then pending."

ularly where the impact of those statutes would be substantive rather than procedural, *see Mulrooney v. Wamboldt*, 215 Conn. 211, 216–17, 575 A.2d 996 (1990). However, even where the effects are substantive rather than procedural, statutes may be applied retroactively when the legislature clearly expresses its intent that it shall be so applied. *See City of New Haven v. Public Utilities Commission*, 165 Conn. 687, 726, 345 A.2d 563 (1974). Moreover, statutes are to be construed to give effect to the apparent intention of the lawmaking body, *see Nationwide Mutual Insurance Co. v. Pasion*, 219 Conn. 764, 594 A.2d 468 (1991), suggesting that Public Act 92–61 should be read retroactively so as to prevent the application of SERA to special deputy sheriffs, which appears to have been the intention of the General Assembly in enacting Public Act 92–61.

In sum, it is arguable that this statute should not be applied retroactively in light of the presumption against retroactivity in Conn.Gen.Stat. § 1–1(u), the arguably substantive nature of the statute, and the potential constitutional problems posed by a retroactive application of the law. However, it is equally possible that the legislature knew of the pendency of the plaintiffs' petition before the Labor Board when it enacted the statute and that its intention was for the statute to apply to the pending petition. If this court is to decide the issue of retroactivity, it is therefore faced with two equally unappealing alternatives. First, it can attempt to avoid a constitutional question by reading the statute as not applying retroactively to the plaintiffs' petition, thereby reversing the interpretation of the Labor Board on an important state law issue prior to any review by the Connecticut state courts and possibly eviscerating Public Act 92–61. Alternatively, the court

can adhere to the interpretation of the Labor Board, thereby disregarding the statutory presumption against retroactivity and necessitating the determination of a constitutional issue.[8] Under such circumstances, the far better option is to avoid action on this question in the absence of any guidance from the Connecticut state courts.

Indeed, this case falls squarely within the parameters of 28 U.S.C. § 1367(c)(1) and the doctrine of *Pullman* abstention. Before this court can decide the constitutionality of Public Act 92–61, it must first await the determination by Connecticut state courts whether the interpretation of the Labor Board complies with Connecticut law. Then, and only then, would this court be prepared to address the retroactivity of Public Act 92–61. As with Count One, Count Six must therefore by dismissed, without prejudice.

## C.

■ Count Four seeks a declaration that Public Act 92–61 is unconstitutional and Count Nine seeks, *inter alia*, an injunction against the enforcement of Public Act 92–61. The constitutionality of Public Act 92–61, however, is closely intertwined with the two antecedent state law issues discussed above—namely, first, whether special deputy sheriffs are "employees" under state law, and, second, whether Public Act 92–61 applies retroactivity. Any claims directed at the constitutionality of Public Act 92–61 must therefore be dismissed, without prejudice.[9]

## II.

## A.

In Counts Seven and Eight, the plaintiffs have sued certain individual defendants for

8. It is a venerable principle of constitutional law that courts

will not anticipate a question of constitutional law in advance of the necessity of deciding it.... It is not the habit of [courts] to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.... Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, [courts] will decide only the latter.

*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

9. It should be noted, however, that any claim for injunctive relief such as the one set forth in Count Nine (as well as any claims for declaratory relief such as the ones set forth in Counts One, Four, and Six) must be directed *solely* at the state official charged with the enforcement of the statute in conformity with *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

damages under 42 U.S.C. §§ 1985(3) and 1986, based on allegations that the defendants conspired to deprive the plaintiffs of their civil rights by helping to enact Public Act 92–61.

The motion to dismiss Count Seven, which alleges a conspiracy to deprive the plaintiffs of their civil rights, must be granted as to *all* defendants. To state a claim under 42 U.S.C. § 1985(3), the plaintiffs must allege that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The Supreme Court has ruled that "class-based" discrimination under Section 1985(3) does not include discrimination against groups based on their economic or commercial activities or status—including, for example, employee groups engaging in union-related activities. *See United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 839, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983) (holding that "economic and commercial conflicts ... are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the general law proscribing injury to persons and property"). In light of these holdings, and in the absence of any authority suggesting that an exception should be drawn for special deputy sheriffs in the State of Connecticut, the court concludes that the plaintiffs have failed to state a claim for a violation of 42 U.S.C. § 1985(3). Accordingly, Count Seven must be dismissed.

The motion to dismiss Count Eight, which alleges that the Governor of Connecticut failed to prevent a conspiratorial wrong, must also be granted. It is evident that the claim asserted in Count Eight must fail if the underlying conspiracy claim alleged in Count Seven is found to be inadequate. Consequently, in light of the court's dismissal of Count Seven, Count Eight must also be dismissed.

As an alternative ground, Count Eight should also be dismissed on the basis of the absolute legislative immunity that protects the Governor when he signs legislation. *See Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). This legislative immunity also bars suits seeking declaratory and injunctive relief against state legislators. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Moreover, any claim seeking to hold Governor Weicker liable for not preventing the legislation similarly falls within the ambit of legislative immunity. *See Saffioti v. Wilson*, 392 F.Supp. 1335, 1343 n. 10 (S.D.N.Y.1975).

In sum, Counts Seven and Eight must be dismissed in their entirety.

### B.

In addition to the claim for injunctive relief, Count Nine seeks damages under 42 U.S.C. § 1983 for injuries to the plaintiffs' constitutional and other legal rights resulting from the application of Public Act 92–61. This damages claim must be dismissed as to all defendants inasmuch as the plaintiffs have not made out a colorable claim under 42 U.S.C. § 1983.

To the extent that the claim relies upon the conspiracy alleged in Count Seven, it must be dismissed inasmuch as the plaintiffs have failed to state a claim under 42 U.S.C. § 1985(3). *See* Part II.A., *supra*. To the extent that the claim relies merely upon the application of Public Act 92–61, the Eleventh Amendment bars any claim for damages against a state officer acting in an official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). To the extent that the claim relies simply upon the enactment of Public Act 92–61, legislative immunity would bar any relief whatsoever—monetary or injunctive. *See Tenney v. Brandhove, supra; Supreme Court of Virginia, supra*. Finally, to the extent that the claim relies upon the lobbying efforts of defendant Levin, who lobbied on behalf of the Connecticut State Sheriffs Association for the passage of Public Act 92–61, it must be dismissed inasmuch as Levin is a private individual who was not acting under the color of state law. *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922,

936–39, 102 S.Ct. 2744, 2753–55, 73 L.Ed.2d 482 (1982).[10]

In sum, all claims for damages asserted in Count Nine must be dismissed as to all defendants.

### III.

In Counts Two and Three, the plaintiffs have sued certain individual defendants for damages under 42 U.S.C. § 1983, based on allegations that the defendants pressured the plaintiffs to support the defendants' political campaigns and to cease union-organizing efforts.

■■■■ The motion to dismiss Count Two, which alleges that defendants Rioux, Lucca, and Tremont violated the civil rights of plaintiff Lajoie, must be denied to the extent that the plaintiff relies on federal (rather than state) civil rights violations. Lajoie has alleged, and the defendants do not dispute, that these defendants were acting under color of state law during their alleged interactions with the plaintiff. Thus, the only issue before the court is whether the plaintiff has alleged facts sufficient to constitute a deprivation of some federal statutory or constitutional right. The plaintiff has alleged, *inter alia,* that the defendants threatened to terminate his employment if he failed to make contributions to certain political campaigns and lobbying efforts. These allegations may, if proven, support the plaintiff's claim that the defendants violated his rights of freedom of speech under the First and Fourteenth Amendments. *See Wilson v. Garcia,* 471 U.S. 261, 273, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985) (including, in a brief "catalog" of section 1983 claims, "dis-

crimination in public employment on the basis of … the exercise of First Amendment rights"); *see also Plano v. Baker,* 504 F.2d 595, 599 (2d Cir.1974) ("[i]t is well settled that a public employee,[11] tenured or not, cannot be discharged for engaging in activity that is protected by the First Amendment").[12] Accordingly, the motion to dismiss Count Two must be denied to the extent that the plaintiff relies on federal civil rights violations.

■■■■ The motion to dismiss Count Three, which alleges that defendants Mak and Delsin violated the civil rights of plaintiff Mattor, must also be denied to the extent that the plaintiff relies on federal (rather than state) civil rights violations. As in Count Two, the plaintiff has alleged, and the defendants do not dispute, that the defendants were acting under color of state law during their alleged interactions with the plaintiff. Thus, the only issue before the court is whether the plaintiff has alleged facts sufficient to constitute a deprivation of some federal statutory or constitutional right. The plaintiff Mattor has alleged, *inter alia,* that the defendants threatened to terminate his employment if he failed to discontinue his efforts to organize a union among his fellow special deputy sheriffs; the plaintiff has also alleged that the defendants attempted to coerce him into making contributions to certain political campaigns and lobbying efforts. These allegations may, if proven, support the plaintiff's claim that the defendants violated his rights of freedom of assembly and freedom of speech under the First and Fourteenth Amendments. *See Wilson v. Garcia,*

---

**10.** Defendant Levin may also be protected, by analogy, by the so-called *Noerr–Pennington* doctrine, which shielded from the Sherman Act on First Amendment grounds the efforts of those who attempted to influence government and public opinion. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, *reh'g denied,* 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." *Noerr,* 365 U.S. at 138, 81 S.Ct. at 530.

**11.** The court finds that the plaintiffs are "public employees" for the purposes of section 1983 regardless of whether they are "employees" of the state under SERA.

**12.** It is also well settled that the First Amendment protects political association as well as political expression and that making (or not making) a campaign contribution is a form of political association. *See Buckley v. Valeo,* 424 U.S. 1, 15, 22, 96 S.Ct. 612, 633, 636, 46 L.Ed.2d 659 (1976) (per curiam). The plaintiff's interest in not making contributions to certain political campaigns and lobbying efforts is therefore clearly protected by the First Amendment.

*supra; Plano v. Baker, supra.* Accordingly, the motion to dismiss Count Two must be denied to the extent that the plaintiff relies on federal civil rights violations.

## IV.

To summarize:

(1) the motion to dismiss Count One, which seeks a declaration that special deputy sheriffs are "employees" under state law, is GRANTED inasmuch as Count One is DISMISSED without prejudice;

(2) the motion to dismiss Count Two, which alleges that defendants Rioux, Lucca, and Tremont violated the civil rights of plaintiff Lajoie, is DENIED;

(3) the motion to dismiss Count Three, which alleges that defendants Mak and Delsin violated the civil rights of plaintiff Mattor, is DENIED;

(4) the motion to · dismiss Count Four, which seeks a declaration that Public Act 92–61 is unconstitutional, is GRANTED inasmuch as Count Four is DISMISSED without prejudice;

(5) the motion to dismiss Count Five, which seeks a writ of mandamus ordering the Labor Board and its officers to continue their consideration of the plaintiffs' petition, is DENIED as moot in light of the plaintiffs' WITHDRAWAL of that claim;

(6) the motion to dismiss Count Six, which seeks a declaration that Public Act 92–61 does not apply retroactively, is GRANTED inasmuch as Count Six is DISMISSED without prejudice;

(7) the motion to dismiss Count Seven, which alleges a conspiracy to deprive the plaintiffs of their civil rights, is GRANTED as to all defendants;

(8) the motion to dismiss Count Eight, which alleges that the Governor of Connecti-

cut failed to prevent a conspiratorial wrong, is GRANTED;

(9) the motion to dismiss Count Nine is GRANTED as to all defendants with regard to any and all claims that seek damages under 42 U.S.C. § 1983; to the extent that Count Nine seeks injunctive relief, the motion to dismiss is GRANTED inasmuch as that claim is DISMISSED without prejudice.

## CONCLUSION

Based on the record, including the oral arguments of counsel, it is hereby ORDERED that:

1. The Motion to Dismiss (or in the Alternative for Summary Judgment) of defendant Lareau and defendant Connecticut State Board of Labor Relations (filed February 9, 1993) (doc. # 34) is hereby GRANTED;

2. The Motion to Dismiss of defendants Mak, Rioux, Healey, Martin, Green, Ocif, Zeeb, Satkowski, Lucca, Tremont, Delsin, Connecticut State Sheriffs Association, and County Sheriffs Advisory Board (filed Feb. 12, 1993) (doc. # 43) is hereby GRANTED in part and DENIED in part in accordance with this Ruling;

3. The Motion to Dismiss of defendants Weicker and Harper (filed February 5, 1993) (doc. # 29) is hereby GRANTED; and

4. The Motion to Dismiss of defendant Levin (filed March 5, 1993) (doc. # 53) is hereby GRANTED.

5. As a result, only the following defendants remain: Mak, Rioux, Lucca, Tremont, and Delsin.

It is so ordered.