[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTIONS FOR SUMMARYJUDGMENT AND DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT
These are consolidated actions to recover damages for personal injuries brought by the plaintiffs Roger Franz, William Grabek and Barbara Kelsey against the defendants United States CT Page 2154 Fleet Leasing, Inc. (Fleet) and Insurance Company of North America (INA) claiming uninsured/underinsured motorist (UM/UIM) coverage benefits pursuant to an automobile insurance policy issued by Fleet.
The following facts are undisputed. The plaintiffs were injured when a car driven by Robert Nowasad crossed the center line of the road, striking the van in which the plaintiffs were riding. Each plaintiff sued Nowasad and the trial court found that Nowasad's negligence was the sole cause of the accident and awarded damages to each plaintiff. The damages awarded by the trial court exceeded the $100,000.00 coverage provided by Nowasad's insurance policy and each plaintiff brought a separate action against the defendants to recover UM/UIM benefits. The claims of all three plaintiffs were consolidated by the court pursuant to the defendant's motion.
At the time of the collision, the plaintiffs were employees of General Dynamics Corporation, Electric Boat Division (GD). The van in which they were riding was leased from Fleet by GD and GD insured the vehicle with INA. The plaintiffs were acting within the course and scope of their employment with GD and each plaintiff received workers' compensation benefits for injuries and losses resulting from the accident.
Each of the plaintiffs has moved for summary judgment. The defendants object to the plaintiffs' motions for summary judgment and cross-move for summary judgment in their favor.
"[P]ractice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.)Doty v. Mucci, 238 Conn. 800, 805 (1996). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Bank ofBoston v. Scott Real Estate Inc., 40 Conn. App. 616, 619-20, cert. denied, 237 Conn. 912 (1996).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the CT Page 2155 nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . ." (citations omitted: internal quotation marks omitted.) Id., 620. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751 (1995).
A. Limits of UM/UIM Coverage Under the Insurance Policy
The plaintiffs' first argument in support of their motions raises the central question in this case. The plaintiffs argue that the insurance policy covering the van in which they were riding at the time of the collision contained a liability limit of $2,000,000.00 and, because Connecticut law requires UM/UIM coverage limits to equal liability limits, there is $2,000,000.00 in UM/UIM coverage available under the insurance policy. See General Statutes § 38a-336 (a)(2).
The plaintiffs further argue that there was an ineffective election of lower UM/UIM limits because Fleet, as a named insured, did not elect lower UM/UIM limits in writing, as required by § 38a-336 (a)(2). Therefore, the plaintiffs argue, the insurance policy provides UM/UIM coverage equal to the liability limits, or $2,000,000.00.
In support of their objection to the plaintiffs' motions and for their cross-motions, the defendants argue that GD, as the named insured on the INA policy, made an effective election for UM/UIM coverage in the amount of $40,000.00 and, therefore, the tortfeasor was not underinsured, since the limits of his insurance ($100,000.00) are higher than the limits of GD's UM/UIM coverage. An "underinsured vehicle" is defined in General Statutes § 38a-336 (e) as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made. . . ."
Resolution of the issue raised by the parties' arguments requires the court to review the INA insurance policy and §38a-336. Construction of a contract of insurance presents a question of law for the court. Aetna Life Casualty Co. v.Bulaong, 218 Conn. 51, 58 (1991). Statutory construction involves a question of law. Davis v. Norwich, 232 Conn. 311, 317 (1995). CT Page 2156
A review of the insurance policy in issue shows that Fleet is not named as an insured under any of the declarations or endorsements. Endorsement one of the policy, however, slates that "[t]he term `Named Insured' includes in addition to the person or organization named in the Declarations: . . . any other person or organization for which Named Insured has agreed in writing to provide insurance; . . ." The lease agreement between Fleet and GD requires GD to name Fleet as an additional insured on a policy of primary coverage insurance procured on a leased vehicle. The court therefore finds that Fleet is an insured under the insurance policy covering the vehicle in which the plaintiffs were injured.
Connecticut's "underinsured motorist insurance statute requires that `[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage . . . for the protection of persons insured thereunder. . . .'" (Emphasis in the original; internal quotation marks omitted.) Middlesex Ins. Co. v. Quinn,225 Conn. 257, 262 (1993), quoting § 38a-336 (a)(1). Statutory provisions relating expressly to uninsured motorist coverage apply also to underinsured motorists. Middlesex Ins. Co. v.Castellano, 225 Conn. 339, 347 n. 8 (1993). Thus, Fleet, as an insured under the INA policy, is protected under the policy's uninsured motorist provisions.
The next question to be determined is whether Fleet made an effective election of lower UM/UIM coverage limits, pursuant to § 38a-336 (a)(2). In Fournier v. Shaklee Corporation,
Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 455413 (May 6, 1994, Lavine, J.), the court stated:
 The statute requires a request [for lower UM/UIM coverage] to be made in writing by the insured, but does not state what the form of the request should be, to whom it should be made, and by when it must be made. It does not say if such a request may be made through a broker, or if it must be made directly by the insured. . . . Nor does it speak to the requisite formality or specificity of such a request.
In the present case, the plaintiffs argue that because only GD signed the form electing lower UM/UIM coverage limits and CT Page 2157 Fleet, as an additional insured under the policy, failed to sign the election form, the election of lower UM/UIM limits was ineffective. In support of their argument, the plaintiffs rely onNationwide Mutual Insurance Co. v. Pasion, 219 Conn. 764, 768
(1991), in which the Supreme Court held that signatures of all insureds are required to constitute an effective election of lower UM/UIM limits.
The defendants claim that the Pasion court wrongly interpreted the legislature's intent in enacting the amendment to General Statutes § 38-175c (now § 38a-336) requiring insureds to elect lower UM/UIM coverage in writing. The defendants argue that Public Acts 1993, No. 93-297 overruledPasion because the statute now reads that "any named insured" may satisfy the election requirement. The defendants also argue that the legislature in enacting the statute meant to protect "individuals who were unsophisticated in insurance coverage matters." The defendants assert that, because both GD and Fleet have legal and insurance departments and are well versed in auto liability insurance, the defendants could not have been the persons the legislature sought to protect by enacting the writing requirement for lower UM/UIM coverage. Finally, the defendants argue that the owners of the vehicle in the Pasion case were joint owners, while in the present case, only GD owned the van and, therefore, the reasoning in Pasion is inapplicable to the present case.
As authority for their assertion that the legislature never intended for the term "insured" as used in § 38a-336 (a)(2), to mean all named insureds, the defendants cite the Supreme Court's opinion in Reliance Ins. Co. v. American Casualty Ins.Co. of Reading, Pennsylvania, 238 Conn. 285, (1996). Reliance,
however, addressed the question of whether an employee was "barred from recovering uninsured motorist coverage benefits against his employer's insurer in regard to a motor vehicle accident that occurred prior to the effective date of [P.A. 93-297]." Id., 286. The Reliance court held that an employee is not so barred, effectively overruling the court's decision in CNAIns. Co. v. Colman, 222 Conn. 769 (1992). Thus, the defendants argument that Pasion was overruled by P.A. 93-297 is incorrect.
The defendants further urge the court to conduct a review of the legislative history of § 38a-336 (a)(2) to ascertain whether the term "insured" as used in the statute was intended to mean all named insureds. The court need not review the CT Page 2158 legislative history because our Supreme Court has examined §38a-336 (previously § 38-175c) several times.
In Nicolletta v. Nationwide Ins. Co., 211 Conn. 640 (1989), the court declined an expansive reading of § 38-175c(a)(2), ruling that the statute did not provide a basis for imposing a limitation on the stacking of UM coverage. The court refused to read language into the statute and ruled that the statute "does not give an insurance carrier a[n] . . . option to reduce the coverage." Id., 647.
In Travelers Indemnity Co. v. Malec, 215 Conn. 399, 400
(1990), the court upheld a trial court's determination that the insured failed to effectively elect a lower amount of UM/UIM coverage under § 38-175c(a)(2). The court examined the legislative history of the statute, and stated at page 403:
 Thus, examination of the recent history of § 38 discloses: (1) a heightened legislative interest in uninsured motorist protection; (2) a mandate to raise the amount of this protection; and (3) an intention to increase the public's consciousness as to the availability of this kind of insurance by requiring increased coverage unless the insured specifically requested otherwise.
The court concluded at page 405:
 In sum, we conclude that in its enactment of § 38-175c(a)(2), the legislature intended that there be absolute parity between liability coverage limits and UM coverage limits as of July 1, 1984, and that any reductions in UM coverage would require a request for a lesser amount to be made after that date.
It is noteworthy, for purposes of the present case, that the defendant in the Travelers case was the American Red Cross, arguably not an individual who is unsophisticated in insurance coverage matters, which supports the position that the statute applies to organizations, as well as to individuals.
In Pasion, the court ruled that § 38-175c(a)(2) required the signature of all named insureds for the election of lower UM/UIM coverage to be effective. Nationwide Mutual Ins. Co. v.Pasion, supra, 219 Conn. 764, 771. The Pasion court rejected the CT Page 2159 argument that the term "insured" in the statute referred only to the initial purchaser or applicant for the insurance policy. Id., 768. After reviewing the legislative history of the statute, the court stated "[t]o permit the signature of one named insured to bind other, possibly uninformed, named insureds would circumvent the legislature's intent that the decision to reduce uninsured motorist coverage by consumers be an informed one." Id., 771.
In Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185 (1992), the court reviewed § 38a-336 (a)(2). The court found that the plaintiff effectively elected lower UM coverage when he initialed a form sent to him by the defendant, thereby indicating a preference for the minimum coverage option, signed his name, dated the form and mailed it to the defendant. The court rejected the plaintiff's claim that he did not fully understand the insurance coverage he was declining because the "notice [sent by the insurance company] made it very clear that increased amounts of coverage were available at a higher premium and that an election to accept less would reduce both the amount of coverage and the policy premium." Id., 193.
These cases, in which the Supreme Court reviewed the legislative history of § 38a-336(a)(2) and its predecessor, § 38-175c(a)(2), indicate that a nonexpansive approach should be taken in evaluating the language of the statute. Accordingly, the court finds that § 38a-336 (a)(2) requires that all the insureds under a policy must request in writing lower UM/UIM limits and because Fleet, an insured, failed to elect lower UM/UIM coverage in writing under the INA policy, the UM/UIM coverage under the policy equals the $2,000,000.00 liability coverage.
B. Workers' Compensation Statute as Bar to Plaintiffs' Claims
The plaintiffs' second argument in support of their motion is that Connecticut's workers compensation statute does not bar the plaintiffs' claims against the insurance policy. The defendants did not address this argument in their objections or cross-motions and conceded at oral argument that the plaintiffs' position is correct.
Based on Reliance Ins. Co. v. American Casualty Ins. Co. ofReading, Pennsylvania, supra, 238 Conn. 290-91, the plaintiffs' position is correct and the court finds that the workers' compensation statute does not bar the plaintiffs' claims against CT Page 2160 the insurance policy.
C. Collateral Estoppel as a Bar to Relitigation of Issues ofLiability and Damages
The final argument the plaintiffs make in support of their motions is that the doctrine of collateral estoppel bars relitigation of the issues pertaining to liability of the tortfeasor and the amount of the plaintiffs' damages. The defendants argue that collateral estoppel does not bar relitigation of these issues because the defendants were not parties to the case in which the issues were determined.
In Roberts v. Westchester Fire Insurance Co.,40 Conn. App. 294, 297, cert. denied, 236 Conn. 915 (1996), the Appellate Court, quoting Commissioner of Motor Vehicles v. DeMilo Co.,233 Conn. 254, 267 (1995), stated:
 "Under Connecticut law, [c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate."
Collateral estoppel must be specifically pleaded by a defendant as an affirmative defense. Carnese v. Middleton,27 Conn. App. 530, 537 (1992). "[C]ollateral estoppel must be specially pleaded before it may be raised as a basis for a summary judgment motion." Busconi v. Dighello, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 036160 (February 7, 1994, Curran, J., 9 CSCR 238).
In the present case, the defendants failed to plead collateral estoppel as an affirmative defense. The failure to plead a special defense, however, "may be treated as waived where the plaintiff fails to make appropriate objection to the evidence and argument offered in support of that defense." Carnese v.Middleton, supra, 27 Conn. App. 537. Since the plaintiffs did not CT Page 2161 object to the defendants' failure to plead collateral estoppel as an affirmative defense, and did not object to the defendants' motion for summary judgment on this ground, they have waived the requirement that collateral estoppel be pleaded as a special defense. Mascia v. Faulkner, Superior Court, judicial district of New Haven at New Haven, Docket No. 349036 (April 29, 1994, Fracasse, J.); Schiff v. Williams, Superior Court, judicial district of New Haven at New Haven, Docket No. 267512 (February 7, 1991, Dorsey, J.). Thus, the court may reach the merits of the parties collateral estoppel arguments.
In support of their motion, the plaintiffs submit the memorandum of decision rendered by Wright, J. in the plaintiffs' case against Robert Nowasad, the tortfeasor. The court found that "the evidence and the physical facts clearly show that the defendant was negligent by crossing the double center line of the highway and was the sole cause of the accident." The court entered judgment as follows: (1) as to plaintiff Frantz, $1,300,000.00; (2) as to plaintiff Grabek, $650,000.00; and (3) as to plaintiff Kelsey, $750,000.00.
"Collateral estoppel can be applied only to bar relitigation of facts that were formally put in issue and ultimately determined by a valid, final judgment." Carnese v. Middleton,
supra, 27 Conn. App. 542. "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." (Internal quotation marks omitted.) AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 297 (1991).
"The purpose of uninsured motorist coverage is to provide a personal injury claimant access to insurance protection to compensate for damages that would have been recoverable if the uninsured motorist had maintained an adequate policy of liability insurance." Williams v. State Farm Mutual Automobile Ins. Co.,229 Conn. 359, 366 (1994). UM/UIM coverage does not give an injured party a right of recovery beyond what would have been available had the tortfeasor maintained adequate insurance. Id., 366-67.
Section 38a-336 (a)(1) provides:
 Each automobile liability insurance policy shall provide insurance, herein called uninsured and CT Page 2162 underinsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334 . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles . . . because of bodily injury, including death resulting therefrom.
The uninsured motorists endorsement to GD's insurance policy provides as follows:
 We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an `uninsured' motor vehicle. The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."
Our Supreme Court interpreted the phrase "legally entitled to collect damages from the owner or driver of an uninsured motor vehicle" to mean "that in order to recover under the policy, the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability." Williams v.State Farm Mutual Automobile Ins. Co., supra, 229 Conn. 367-68. In the present case, the parties agree that the tortfeasor's vehicle, insured by Liberty Mutual Insurance Company, had liability limits of $100,000.00 per occurrence. In the trial between the plaintiffs and the tortfeasor, the court found that the plaintiffs were entitled to recover damages well in excess of the tortfeasor's liability limits. Thus, the tortfeasor was underinsured. The trial court also found that the tortfeasor was the sole cause of the accident. Finally, the trial court assessed the tortfeasor's liability as to each plaintiff.
The defendants present no evidence to contradict any of the above findings. The defendants also tail to present evidence to contradict the damages awarded by the court in the plaintiffs' suits against Nowasad. Instead, the defendants argue that their constitutional right to a jury trial would be violated if the court applies the doctrine of collateral estoppel. See Conn. Const., art. I, § 19. The defendants argue that this provision of the State's constitution entitles all litigants in civil actions to have questions of fact decided by a jury of six, CT Page 2163 citing Gentile v. Altermatt, 169 Conn. 267, 298 (1975), as support for their assertion.
The defendants also argue that the "amount of fair, just and reasonable damages in an action for breach of an insurance contract is an issue of fact which entitles the defendant to a jury trial." The issues before the court in the suit between the plaintiffs and the tortfeasor were liability and damages. The issue in the present action is whether Fleet effectively elected lower UM/UIM coverage than the limits of the liability coverage under the INA policy. The plaintiffs have not alleged breach of an insurance contract in their pleadings in the present case, nor in their prior action against the tortfeasor. Thus, the defendants' argument that invocation of the doctrine of collateral estoppel will violate their constitutional rights is without merit.
The defendants' next argument is that the doctrine of collateral estoppel does not apply to this proceeding because the defendants were not parties to the prior action, nor were the defendants in privity with a party to that action. In AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 302 (1991), the Supreme Court abandoned the doctrine of mutuality of parties, which held that a party may not use a prior judgment as an estoppel against the other party unless both parties were bound by the judgment. Thus, collateral estoppel may be invoked not only against a party to the prior adverse proceeding, but also against those in privity with that party. Id., 303.
The concept of privity exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of the party's purported privity with a party at the initial proceeding. Id., 304. In support of their position, the plaintiffs rely on Harnicar v.Nationwide Mutual Ins. Co., Superior Court, judicial district of Litchfield, Docket No. 63893 (June 7, 1995, Pickett, J.,14 Conn. L. Rptr. 543), in which the court stated:
 In this case, the defendant is in privity with the uninsured motorist because both parties share the same legal interests in the [prior] action. The defendant and the tortfeasor shared identical interests because that action determined whether it the plaintiff was legally entitled to recover damages from the uninsured motorist. This issue is central to whether the plaintiff may CT Page 2164 recover uninsured motorist benefits from the defendant. Additionally, the defendant had ample opportunity and notice to raise these issues and present a defense in the [prior] action.
The defendants similarly are in privity with the uninsured motorist in the present case.
The court finds that the issues of liability and damages were determined in the prior action between the plaintiffs and Nowasad, the tortfeasor. The plaintiffs' liability claims against the defendants arise out of the same set of operative facts. The plaintiffs' damages were raised in the pleadings and evidence was submitted to the court in the previous action. Thus, the issues of liability and damages were actually litigated and necessarily determined in the previous action and the defendants are barred from raising the same issues in the present action.
Conclusion
In accordance with the foregoing discussion, the court makes the following orders:
1. Summary judgment is granted in favor of the plaintiffs against the defendants as follows:
a) as to the plaintiff Roger Franz, $1,300,000.00;
b) as to the plaintiff William Grabek, $650,000.00; and
c) as to the plaintiff Barbara Kelsey, $750,000.00.
2. Summary judgment is denied as to the defendants' cross-motions for summary judgment.
3. The judgments in favor of the plaintiffs are to be reduced by applicable credits for prior payments made to the plaintiffs by or on behalf of the tortfeasor Robert Nowasad and by credits for outstanding workers' compensation liens for benefits paid to the plaintiffs as a result of the injuries and losses sustained by the plaintiffs from the accident.
4. Interest is to be added to such judgments as provided by statute. CT Page 2165
5. Reasonable costs are awarded to the plaintiffs.
6. If the parties are unable to stipulate to the applicable credits and interest on or before March 22, 1997 a further hearing will be scheduled before the court to determine such credits and interest.
Hendel, J.