Janice Marie **KING**

v.

Brian R. **LENSINK, et al.**

**Civ. No. N–89–132 (PCD).**

United States District Court, D. Connecticut.

Sept. 18, 1989.

Michael O. Sheehan, Pittman, Sheehan, Soloman & Swaine, New Haven, Conn., for plaintiff.

Clarine Nardi Riddle, Acting Atty. Gen., and James P. Welsh, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff, invoking 42 U.S.C. § 1983, alleges she was terminated as Assistant Regional Director of the Connecticut Department of Mental Retardation with neither notice nor a hearing to contest the termination. Plaintiff alleges deprivation of her property right to continued employment contrary to the due process clause of the fourteenth amendment. On April 3, 1989, this court found that plaintiff had sustained irreparable harm based on her termination. Transcript ("Tr.") at 158. It was also found that plaintiff had raised serious question going to the merits and that plaintiff's present posture tipped the balance of equities sufficiently in her favor to warrant preliminary injunctive relief. Tr. at 159–60. She was thus held entitled to reinstatement to protect the status quo until a decision on the merits. Tr. at 161. Defendants now move for summary judgment, arguing that plaintiff has no protected property interest in continued employment as a matter of law.

### Background

On or about August 11, 1988, plaintiff was appointed to the position of Assistant Regional Director of Day Services in Region 5 of the Connecticut Department of Mental Retardation by B. Dowling, who was then the Regional Director. Prior to her appointment, plaintiff interviewed with Dowling and discussed the duties and nature of the position. During this interview, plaintiff asserts that Dowling advised her "that [she] could continue in [her] position for as long as [she] continue[d] to perform the duties of [her] job." Affidavit of King, ¶ 2. Plaintiff thereafter resigned from her prior government position in Massachusetts and relocated to Connecticut.

On or about January 9, 1989, Dowling was replaced as Regional Director by defendant Burton. This change was ordered by defendant Lensink, Commissioner of the Department of Retardation. On January 12, 1989, plaintiff was directed by Burton to submit a resignation by January 26, 1989. Plaintiff refused to comply. On January 30, plaintiff was informed by Burton that she would be terminated effective March 1, 1989. Plaintiff was terminated on March 1, despite her protests that such action would violate her rights to procedural due process.

### Discussion

Summary judgment is appropriate only if a review of the record demonstrates "that there are no genuine issues as to the material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group v. London American Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981), quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). The court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*). Summary judgment, therefore, cannot enter unless there is no controversy regarding the facts and the reasonable inferences which could be drawn from them. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57–58 (2d Cir.1987). "As long as the plaintiff has adduced sufficient facts to substantiate the elements of his [or her] claim, summary judgment is inappropriate." *Id.*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The fourteenth amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." To invoke procedural due process, a plaintiff must show "the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The property interests required for fourteenth amendment protection are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such

as state law." *Id.* at 577, 92 S.Ct. at 2709. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). A property interest may also be created by implied contract if there are "mutually explicit understandings" that support a person's claim. *Bishop v. Wood,* 426 U.S. 341, 344 & n. 6, 96 S.Ct. 2074, 2077 & n. 6, 48 L.Ed.2d 684 (1976), citing *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A "property interest" may include the right to continued employment. *See Roth,* 408 U.S. at 572, 577, 92 S.Ct. at 2706–07, 2709. If a public employee can show that she possesses a property or liberty interest in her employment, the due process protections of the fourteenth amendment will be triggered. *Vinyard v. King,* 728 F.2d 428, 430 (10th Cir.1984), citing *Roth,* 408 U.S. at 564, 92 S.Ct. at 2703. In the employment context a property interest is generally created in one of two ways: (1) by an independent source such as a state statute securing certain benefits or rights to a public employee; or (2) by an express or implied promise of continued employment. *See Shlay v. Montgomery,* 802 F.2d 918, 921 (7th Cir. 1986).

▌ Plaintiff advances two theories to support her claim of wrongful termination: (1) an oral contract of employment which provided for her continued employment subject to termination only for good cause based on inadequate performance of her duties; and (2) an entitlement to continued employment pursuant to Conn.Gen.Stat. § 19a–447. However, in response to defendants' motion, plaintiff asserts only that her property rights and her legitimate expectation of continued employment are based upon her agreement with the Regional Director, who, under the statute, had authority to hire her for her position. Plaintiff's Memorandum in Opposition at 5.

Plaintiff, in her testimony and in her affidavit, has created an issue of fact regarding whether the Regional Director represented that she would not be removed except for unsatisfactory job performance. Plaintiff contends that she accepted the position as Assistant Regional Director in reliance upon Dowling's representations. Thus, she argues that an oral contract was created under which she has a property right to continued employment. Thus, for the purposes of resolving this motion, it is assumed that Dowling did represent to plaintiff that she would not be removed without cause.

"Mutually explicit understandings ... do not 'create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes.'" *Chu v. Schweiker,* 690 F.2d 330, 334 (2d Cir.1981), quoting *Baden v. Koch,* 638 F.2d 486, 492 (2d Cir.1980). *See also Zimmerman v. Board of Educ. of Town of Branford,* 597 F.Supp. 72, 77 (D.Conn.1984) ("A contractual provision or mutual understanding contrary to the statutory provision may give rise to a cause of action for breach of contract, but will not give rise to a protectable property interest."). Thus, even if plaintiff could show an implied contract of employment by which she could only be fired for cause, she could not assert a property right based on that contract unless the contract was made pursuant to a statute or authorizing regulation or that Dowling was statutorily authorized to enter into such an agreement. *See Brady v. Gebbie,* 859 F.2d 1543, 1549 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Section 19a–447(b), Conn.Gen.Stat., provides:

> Each director may with the approval of the commissioner of mental retardation appoint four assistant directors for the efficient conduct of the business of each training school or state mental retardation region. Each director shall designate an assistant director who shall in the absence or disqualification of the director or on his death, exercise the powers and duties of the director until he resumes his duties or the vacancy is filled. Assistant directors shall be removable by the director.

This legislation served as a vehicle in Commissioner Lensink's efforts to reorganize the structure of the Department of Mental Retardation. The position of Assistant Regional Director was originally that of "As-

sistant Superintendent" and was established as a state classified position.[1] Tr. at 115–16. It was felt, however, that the creation of Assistant Regional Director as an exempt position was necessary to foster quick change in the department and to enable the assistants to immediately take on the duties of the Regional Director in his or her absence. Tr. at 82. Upon passage of the Bill, the state personnel department created the new job title of Mental Retardation Assistant Regional Director in the unclassified service and removed the former Assistant Superintendent position from the classified service, in effect abolishing that position. Tr. at 115–16. The Department of Mental Retardation and the Department of Administrative Services have thus given effect to the legislation in the manner advanced by defendants. *See Anderson v. Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978) (courts should give deference to the construction given the statute by the agencies charged with its enforcement or implementation).

Clearly, Dowling had the statutory authority to hire plaintiff. But plaintiff's argument that the statute also conferred authority upon Dowling to enter into an employment contract whereby termination could only be effected by a showing of cause cannot be supported. Plaintiff can assert a property right based on an express contract of employment only if the contract was formed pursuant to a statute or authorizing regulation. *Brady,* 859 F.2d at 1549 (applying Oregon law). When the statute is considered in light of its history, language, the purposes it is designed to serve, and the circumstances surrounding its enactment, it is clear that the legislature intended the position of Assistant Regional Director to be exempted from classified service. As such, the position is one of employment at the will of the incumbent Director. Allowing Dowling to make an agreement to the contrary would defeat the state's purposes and interests in the reclassification of the Assistant Regional Director position. *See Brady,* 859 F.2d at 1550. A contrary holding would allow an Assistant Regional Director to enter an agreement which would effectively change a legislatively created unclassified position into a classified one. *Id.* Dowling's personal policy not to terminate assistants as long as they worked well together, Tr. at 64, does not bind the state, especially where Dowling himself served at the pleasure of the Commissioner.

Plaintiff does not cite, nor has this court's research revealed, any statute or regulation which purports to give Dowling the authority to enter into an employment contract such as alleged by plaintiff. Absent any express grant of authority and in view of the fact that implying such authority would conflict with the restrictive thrust of and the legislature's purpose in enacting Conn.Gen.Stat. § 19a–447(b), Dowling had no authority to enter into a contract giving plaintiff a protected right to continued employment. Since Dowling "lacked such authority, plaintiff can make no *legitimate* claim of entitlement to continued employment." *Polson v. Davis,* 635 F.Supp. 1130, 1141 (D.Kan.1986). *See also Shlay,* 802 F.2d at 921 (promise of career employment made by unauthorized official did not create enforceable contract rights, since city was not legally responsible for acts taken by its officials in excess of their authority).

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment is granted.

SO ORDERED.

---

1. Employees in the classified service are not at-will employees. If they perform their duties in a satisfactory manner, they shall not be dismissed without cause. Conn.Gen.Stat. § 5–240(c). It is thus recognized that classified civil service employees in Connecticut have a property right in continued employment which is protected by the due process clause of the fourteenth amendment. *See, e.g., Fusco v. Motto,* 649 F.Supp. 1486 (D.Conn.1986). Employees in unclassified positions, on the other hand, serve at the will of their appointing authority and can be dismissed at any time without cause. For these employees, there generally is no reasonable expectation of employment and thus no property right. *Brady,* 859 F.2d at 1548.