Ann Kennedy ST. GEORGE

v.

Edwin S. MAK, Warren Tingley, Gary
Ingeme, and Betsy Dunham.

Louis A. LEWIS

v.

Edwin S. MAK, Warren Tingley,
and Gary Ingeme.

Civ. Nos. 5:92–587 (JAC), 5:92–593 (JAC).

United States District Court,
D. Connecticut.

Dec. 29, 1993.

**626**

Margaret J. Slez, Slez & Slez, Westport, CT, for plaintiffs.

Michael J. Lanoue, Margaret Q. Chapple, Asst. Attys. Gen. of the State of Conn., Hartford, CT, for defendants.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The plaintiffs were at all relevant times Special Deputy Sheriffs for the Fairfield County Sheriff's Department.[1] The defendants include Edwin S. Mak, Fairfield County High Sheriff; Warren Tingley, Fairfield County Chief Deputy Sheriff; and Gary Ingeme and Betsy Dunham, Fairfield County Special Deputy Sheriffs. These actions[2] involve claims made pursuant to 42 U.S.C. § 1983, various Connecticut constitutional and statutory provisions, and Connecticut common law. Pending before the court are the defendants' motions for summary judgment (filed Aug. 23, 1993).

### BACKGROUND

In *St. George*, the plaintiff alleges that the defendants retaliated against her for her involvement in efforts of the Fairfield County Special Deputy Sheriffs to organize for the purposes of collective bargaining. More specifically, the plaintiff claims that defendant Ingeme, on several occasions, threatened to terminate and/or hinder the plaintiff's employment if she continued her organizing efforts; that Ingeme made these threats on the authority of defendant Mak; that Ingeme repeatedly abused and harassed the plaintiff with degrading comments and vulgar gestures; that Ingeme falsely and maliciously accused the plaintiff of filing false reports and provoking state inmates to commit violent acts; that defendants Ingeme and Dunham told other Special Deputy Sheriffs that they intended to make the plaintiff's life

---

1. At oral argument, counsel represented that Ann Kennedy St. George, while previously discharged, has been reinstated as a Special Deputy Sheriff. Counsel further represented that Louis A. Lewis, who was discharged on July 26, 1991, has not been reinstated.

2. In an oral ruling at the hearing on the defendants' motions to dismiss held on the record and in open court on March 22, 1993, the court consolidated these two actions for pre-trial purposes. *See* Certified Official Transcript of March 22, 1993 Ruling of the Court (filed Apr. 13, 1993) ("Tr. of 3/22/93 Ruling"), at 7. For purposes of this ruling, *St. George v. Mak, et al.,* Civil Action No. 5:92–587 (JAC), will be referred to as "*St. George*" and *Lewis v. Mak, et al.,* Civil Action 5:92–593 (JAC), will be referred to as "*Lewis.*"

"miserable"; that Dunham maliciously refused to provide the plaintiff with needed medical attention when she was injured in the course of performing her official duties; that defendants Tingley and Mak condoned and even encouraged the actions of Ingeme and Dunham; that the several defendants forced her, under the threat of termination of employment and abuse, to pay yearly dues to the Fairfield County Sheriff's Association; that these contributions were ultimately used for improper political purposes—namely, to finance the re-election campaign of defendant Mak to the office of High Sheriff; and, finally, that the defendants wrongfully terminated her employment for filing a workers' compensation claim.

In Count I, the plaintiff asserts a claim pursuant to 42 U.S.C. § 1983, alleging that the defendants violated her constitutional rights by depriving her of equal protection of the laws; interfering with her rights to free speech and assembly; and subjecting her to a hostile, threatening, harassing, and unsafe work environment.

In Count II, the plaintiff alleges that the defendants violated her rights, under Article 1, Sections 4 and 14 of the Connecticut Constitution, to free speech and to assemble in a peaceable manner with other Special Deputy Sheriffs.[3]

Count III, which largely echoes Count I, alleges that the defendants violated the plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

Similarly, in Count IV, the plaintiff alleges that the defendants violated Conn.Gen.Stat. § 31–51q, Connecticut's so-called Free Speech Act.[4]

Count V sets forth a claim based on Article 1, Section 20 of the Connecticut Constitution—the state equal protection clause.[5] Similarly, Count VI alleges a violation of Conn.Gen.Stat. § 46a–71—the Connecticut employment discrimination statute.[6]

In Count VII, the plaintiff asserts a claim against defendant Ingeme and Dunham, alleging the intentional infliction of emotional distress.

In Counts VIII and IX, the plaintiff contends that defendants Ingeme and Dunham conspired to interfere with the plaintiff's civil rights, in violation of 42 U.S.C. § 1985(3), while defendants Tingley and Mak failed to prevent a conspiratorial wrong, in violation of 42 U.S.C. § 1986.

The plaintiff has withdrawn Count X, admitting that she is barred from pursuing in federal court an action under Conn.Gen.Stat. § 9–333x.[7] *See* Plaintiff's Memorandum in

---

**3.** Article I, Section 4 provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects...." Article I, Section 14 states that "[t]he citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other purposes, by petition, address or remonstrance."

**4.** Conn.Gen.Stat. § 31–51q states that

Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part

of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

**5.** Article I, Section 20 provides that

[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability.

**6.** Conn.Gen.Stat. § 46a–71 provides, in pertinent part, that

(a) [a]ll services of every state agency shall be performed without discrimination based upon race, color, religious creed, sex, age, national origin, ancestry, mental retardation or physical disability....

**7.** This provision prohibits corrupt practices in state elections and campaign financing.

*St. George* (filed Sept. 21, 1993), at unnumbered page 17.

Finally, Count XI sets forth a claim pursuant to Conn.Gen.Stat. § 31–290a—the Connecticut workers' compensation statute, which prohibits any employer from discriminating against or discharging any employee because the employee has filed a claim for workers' compensation.[8]

In *Lewis*, the plaintiff makes similar allegations against defendants Mak, Tingley, and Ingeme. In particular, the plaintiff alleges that—in retaliation for the exercise of his free speech and assembly rights with respect to his participation in union organizing activities—he was threatened with termination of his employment as a Special Deputy Sheriff by Ingeme, demoted by Tingley, and wrongfully terminated by Mak. Although the official reason for the termination of his employment was a minor and unintentional violation of a weapons policy regulation of the Fairfield County Sheriffs Department, Lewis claims that such violations were regularly punished previously only by verbal warning or reprimand. Lewis further maintains that his termination hearing was a sham, and that the real reasons for the termination of his employment were his union organizing activities and his testimony in support of St. George's claim of harassment.

Like the complaint in *St. George*, Count I of *Lewis* asserts a claim based on 42 U.S.C. § 1983, alleging that the defendants deprived the plaintiff of equal protection of the laws, interfered with his rights to free speech and assembly, and denied him procedural due process. Similarly, Count II sets forth a claim based on Article 1, Sections 4 and 14 of the Connecticut Constitution, while Count III alleges that the defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution. Count IV further alleges a violation of Conn.Gen.Stat. § 31–51q.

Count V, like Counts VIII and IX in *St. George*, alleges that the defendants conspired to interfere with the plaintiff's civil rights, in violation of 42 U.S.C. § 1985(3).

Finally, Count VI sets forth a claim for intentional infliction of emotional distress.

In an oral ruling at a hearing on the record on March 22, 1993, the court granted in part and denied in part the defendants' motions to dismiss. In that ruling, the court, pursuant to the Eleventh Amendment, dismissed the plaintiffs' claims to the extent that the plaintiffs sought damages from the defendants in their official capacities. The court also dismissed all claims under 42 U.S.C. § 1983 based on state law, holding that all claims under that provision must be based on alleged violations of *federal* statutory and constitutional rights. Accordingly, any claim under 42 U.S.C. § 1983 based on the Connecticut State Labor Relations Act, Conn.Gen. Stat. § 5–270 *et seq.*, or any such claim based on Conn.Gen.Stat. §§ 46a–100, 46a–101—which prohibit discriminatory employment practices—is no longer before the court.[9]

On August 23, 1993, the defendants filed motions for summary judgment in both actions. After full briefing, the court heard oral argument on December 6, 1993, after which it reserved decision.

*DISCUSSION*

I.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The court's responsibility is not to resolve disputed issues of fact but to assess whether there

---

**8.** Conn.Gen.Stat. § 31–290a(a) provides that [n]o employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation

benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

**9.** *See* Tr. of 3/22/93 Ruling, *supra* note 2, at 3–4.

are any factual issues to be tried, while resolving ambiguities against the moving party. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (Feinberg, C.J.), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The court must therefore view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

### A.

In support of their motions for summary judgment—which are, in effect motions for *partial* summary judgment[10]—the defendants first argue that the plaintiffs' state statutory claims must fail.[11] The defendants claim that, in their individual capacities, they are not "employers" or "state agencies" for purposes of these provisions. In any event, the defendants further contend that the question of whether Special Deputy Sheriffs are actually "employees" under these provisions is an unsettled question of state law.

The defendants further argue that the plaintiffs' state constitutional and common law claims[12] should be dismissed because the plaintiffs have not exhausted their administrative remedies. The defendants claim that the doctrine of exhaustion applies even to constitutional claims. The defendants concede, however, that plaintiff St. George's case before the Connecticut State Board of Labor Relations ("Labor Board") has been closed.[13]

With regard to the procedural due process claim in *Lewis* set forth in Count I, the defendants contend that the plaintiff does not have a property interest in continued employment as a Special Deputy Sheriff, and that he is therefore not entitled to due process protection. According to the defendants, the statute creating the position of Special Deputy Sheriff, Conn.Gen.Stat. § 6–43, is clear on its face: Special Deputy Sheriffs are entitled to their positions only as long as the appointing Sheriff deems necessary.[14] Even if there were "mutually explicit understandings" that created an expectation of continued employment, *see Bishop v. Wood*, 426 U.S. 341, 344 n. 6, 96 S.Ct. 2074, 2077 n. 6, 48 L.Ed.2d 684 (1976) (*citing Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)); *King v. Lensink*, 720 F.Supp. 236, 238 (D.Conn.1989), the defendants assert that such understandings would run counter to express statutory provisions and would therefore not be suffi-

---

10. It is important to note that defendants' counsel explicitly stated at oral argument on December 6, 1993 that they were not moving for summary judgment on the plaintiff's federal constitutional claims—other than Lewis' procedural due process claim.

11. These include claims based on the Connecticut free speech statute, Conn.Gen.Stat. § 31–51q (Count IV in both actions); the Connecticut employment discrimination statute, Conn.Gen.Stat. § 46a–71 (Count VI in *St. George*); and the Connecticut workers' compensation statute, Conn.Gen.Stat. § 31–290a (Count XI in *St. George*).

12. These include the claims brought pursuant to Article I, Sections 4 and 14 of the Connecticut Constitution (Counts II in both actions); Article I, Section 20 of the Connecticut Constitution (Count V in *St. George*); and the Connecticut common law doctrine of intentional infliction of emotional distress (Count VII in *St. George* and Count VI in *Lewis*).

13. Defendants' Supplemental Reply Brief in *St. George* (filed Oct. 29, 1993) at 1.

14. Conn.Gen.Stat. § 6–43 provides that

> In case of riot or civil commotion or reasonable apprehension thereof, or when he deems it necessary for the prevention or investigation of crime, or when needed for attendance at court, the sheriff of any county may appoint special deputy sheriffs in such numbers as he deems necessary. Special deputy sheriffs shall be sworn to the faithful performance of their duties and, having been so sworn, shall have all the powers of the sheriff as provided by law, except as to service of civil process; and such special deputies shall continue to hold their office as long as the sheriff appointing them deems necessary but not longer than the term of his office. Special deputy sheriffs shall not be subject to the provisions of chapters 66 to 68, inclusive.

Chapter 66, Conn.Gen.Stat. § 5–152 *et seq.*, is the State Employees Retirement Act; Chapter 67, Conn.Gen.Stat. § 5–193 *et seq.*, is the State Personnel Act; and Chapter 68, Conn.Gen.Stat. § 5–270 *et seq.*, which governs collective bargaining rights, is known as the State Employees Relations Act ("SERA").

cient to create a property interest for purposes of the Due Process Clause of the Fourteenth Amendment.

Finally, the defendants maintain that the plaintiffs' claims based on 42 U.S.C. §§ 1985(3) and 1986 [15] cannot succeed in the absence of "some racial, or perhaps class-based, invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). In the defendants' view, anti-union bias does not represent the kind of animus that triggers these provisions.

### B.

In response, the plaintiffs argue that—with regard to their state statutory claims—the defendants, while sued in the *individual* capacities, are liable for actions taken in their *official* capacities. In the plaintiffs' view, the defendants admit that Mak, at least in his official capacity, was an employer of the plaintiffs. The plaintiffs further contend that genuine issues of material fact remain as to whether the other defendants were acting pursuant to the authority of Mak as employer. The plaintiffs therefore maintain that their state statutory claims should survive the defendants' motions for summary judgment.

With regard to their state constitutional and common law claims, the plaintiffs first assert that, under state law, constitutional claims present a recognized exception to the principle that administrative remedies should be exhausted before recourse to the courts. The plaintiffs further claim that exhaustion would be "necessarily futile" in any event. *See Doe v. Heintz*, 204 Conn. 17, 34, 526 A.2d 1318 (1987) (citations omitted). Finally, the plaintiffs claim that the availability of state remedies cannot divest this court of supplemental jurisdiction that would otherwise be proper.

The plaintiffs next argue that—inasmuch as the defendants are agents of the state—their claims of a civil rights conspiracy pursuant to 42 U.S.C. §§ 1985(3) and 1986 should survive the defendants' motion for summary judgment. According to the plaintiffs, only claims of a purely *private* conspiracy resting on economic motivations are barred by governing precedent.

Finally, with regard to the procedural due process claim in *Lewis*, the plaintiffs contend that the plaintiff has a legitimate property interest in continued employment as a Special Deputy Sheriff and that he is therefore entitled to due process protection. According to Lewis, there are three sources for his right to continued employment: the language of Conn.Gen.Stat. § 6–43; [16] an implied promise of continued employment; and "mutually explicit understandings" that he would not be terminated without a fair termination hearing. In Lewis' view, all of these factors cabin the discretion of the High Sheriff with regard to the termination of Special Deputy Sheriffs. Lewis maintains that this is evidenced by the fact that a termination hearing was in fact held. Lewis claims, however, that this hearing was a sham, and that the real reason for the termination of his employment stemmed from his participation in union organizing activities.

### III.

#### A.

##### (1)

■ The defendants first maintain that the plaintiffs' state statutory claims [17]—asserted against the defendants in their individual capacities—must fail inasmuch as the defendants, in their individual capacities, are not liable for their official actions taken as "employers" or "state agencies" for the purposes of these provisions.[18] In response, the

---

**15.** These include Counts VIII and IX in *St. George* and Count V in *Lewis*.

**16.** *See* note 14, *supra.*

**17.** *See* note 11, *supra.*

**18.** The defendants admit that Mak, in his *official* capacity as High Sheriff, "employed" the plain-

tiffs through his power of appointment. *See* Defendants' Memorandum of Law in *St. George* (filed Aug. 23, 1993) ("Defendants' Memorandum in *St. George* "), at 4; Defendants' Memorandum of Law in *Lewis* (filed Aug. 23, 1993) ("Defendants' Memorandum in *Lewis* "), at 9. It bears recalling, however, that the plaintiffs' claims in these actions—to the extent that such

plaintiffs, relying on *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), argue that the defendants—while sued in their individual capacities—are liable for acts committed in their official capacities.

In *Hafer v. Melo,* the Supreme Court held that state officers may be held personally liable for damages under Section 1983 based upon actions taken in their official capacities. More particularly, the Court stated that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." —— U.S. at ——, 112 S.Ct. at 362.[19]

The plaintiffs urge the court to apply the rationale of *Hafer v. Melo* to their state statutory claims. The plaintiffs assert that there is no authority to contradict the proposition that officials sued in their individual capacities under state law can be held liable for official actions.

The defendants, on the other hand, argue that the logic of *Hafer v. Melo* applies only in the limited context of Section 1983, and not to claims arising solely under Connecticut law. According to the defendants, there is no authority to support the plaintiffs' contention that state officials can be held personally liable under the state statutes at issue here for acts committed in their official capacities.

Both sides, however, are wide of the mark. First, *Hafer v. Melo* is simply not apposite here. The holding in that case, as the defendants correctly suggest, reflects the "broad language of § 1983," which was enacted "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." —— U.S. at ——, 112 S.Ct. at 363 (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 243, 94 S.Ct. 1683, 1690, 40 L.Ed.2d 90 (1974), *quoting,* in turn, *Monroe v. Pape,* 365 U.S. 167, 171–72, 81

S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). Absent any Connecticut authority or precedent which interprets the state statutes at issue here to conform with the language, purpose, and scope of Section 1983, this court is not prepared to apply the framework of that provision to the plaintiffs' state statutory claims.

However, the defendants' assertion that there is no authority to support the notion that state officials can be held personally liable under state law for official acts is equally misplaced. In *Horton v. Meskill,* 172 Conn. 615, 624–25, 376 A.2d 359 (1977), the Connecticut Supreme Court held that state officers acting in excess of their statutory authority cannot shield themselves with sovereign immunity. *Cf. Fetterman v. University of Connecticut,* 192 Conn. 539, 552–53, 473 A.2d 1176 (1984) (holding that state officials, while sued in their individual capacities, could not be held liable for official acts under the circumstances presented in that case inasmuch as "the plaintiff makes no claim … that any of the defendant officers sued in their individual capacities acted … in excess of statutory authority").

Here, at the very least, there is a genuine issue of material fact as to whether defendant Mak acted in excess of his statutory authority. If he did, sovereign immunity would not protect him and, as a result, he could be held personally liable for acts performed in his official capacity. Moreover, there is also a genuine issue of material fact as to whether the other defendants were acting pursuant to defendant Mak's authority as High Sheriff. If so, they, too, may be held personally liable for official acts taken as an "employer" or a "state agency." Accordingly, the court cannot grant the defendants' motions for summary judgment on this ground.

(2)

■ The defendants further argue that the plaintiffs' claims pursuant to the Con-

claims seek damages from the defendants in their *official* capacities—are barred by the Eleventh Amendment. *See* note 9, *supra,* and accompanying text.

19. *See also Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("the [E]leventh [A]mendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions").

necticut free speech act and the Connecticut workers compensation statute [20]—which specifically refer only to conduct taken against "employees"—should be dismissed because they raise a novel and unsettled issue of state law. More particularly, the defendants assert that this court should not decide whether Special Deputy Sheriffs are in fact "employees"—rather than "independent contractors," for example—under Connecticut law.

This court recently faced a similar question in *Lajoie, et al. v. Connecticut State Board of Labor Relations, et al.*, 837 F.Supp. 34 (D.Conn.1993). There, the court declined to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(1), over the plaintiffs' state law claim that Special Deputy Sheriffs are "employees" under SERA [21] inasmuch as that claim raised an undecided and disputed issue of state law.[22]

While the Labor Board has recently stated that Special Deputy Sheriffs are in fact "employees" under Connecticut law,[23] there is nothing in this record, as it currently stands, to indicate that this matter has been conclusively resolved by state authorities. Apparently, no Connecticut judicial tribunal has yet answered this question, nor has the Connecticut General Assembly specifically addressed the issue.

It therefore appears that this court's determination—one way or the other—as to whether Special Deputy Sheriffs are "employees" under Connecticut law would be, at best, a prediction of subsequent state law developments—"a tentative answer which may be displaced tomorrow by a state adjudication." *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). *See also Lajoie*, 837 F.Supp. at 38. Without any firm direction from the Connecticut state courts, this court abstains from deciding such a novel and contested state law issue.

Accordingly, this court declines to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(1), over the plaintiffs' state law claims pursuant to the Connecticut free speech act and the Connecticut workers compensation statute. These claims are therefore dismissed, without prejudice.

## B.

■ The defendants next contend that the plaintiffs' state constitutional and common law claims [24] should be dismissed because of the plaintiffs' failure to exhaust their state administrative remedies. This argument is unpersuasive.

As an initial matter, the court notes that this question is governed by state law.[25] Under the circumstances presented here, the court finds that the administrative remedies available to the plaintiffs "fall[ ] short of effectively, conveniently and directly determining whether the [plaintiff is] entitled to the relief claimed." *Friedson v. Westport*, 181 Conn. 230, 233, 435 A.2d 17 (1980) (*quoting*

**20.** *See* notes 4, 8, and 11, *supra*.

**21.** *See* note 14, *supra*.

**22.** 28 U.S.C. § 1367(c)(1) provides that "district courts may decline to exercise supplemental jurisdiction ... if ... the [state law] claim raises a novel or complex issue of State law,...." This provision serves a purpose quite similar to the doctrine of so-called *Pullman* abstention, named after Justice Frankfurter's opinion in *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In that case, the Supreme Court declined to address the constitutionality of a regulation issued by the Texas Railroad Commission prior to a determination by Texas state courts of whether that regulation complied with Texas law. *See* Practice Commentary to 28 U.S.C. § 1367, in the 1993 Cumulative Annual Pocket Part to Title 28 of the United States Code, at 240, 244. *See also Lajoie*, 837 F.Supp. at 37–38.

**23.** *See* In the Matter of Sheriff's Department, Fairfield County and Louis Lewis, Case No. SPP–13,958, Decision No. 3106–B (Connecticut State Board of Labor Relations, Dec. 1, 1993) ("Labor Board's December 1, 1993 Decision"), at 15, 16–30. This decision is a part of the record in the *Lewis* action. *See* doc. #27 (filed Dec. 17, 1993).

**24.** *See* note 12, *supra*.

**25.** When a federal court exercises its supplemental jurisdiction over state law claims, the substantive law of that state controls. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (regarding "pendent" jurisdiction, which was eventually codified in 28 U.S.C. § 1367 as "supplemental" jurisdiction).

*Bianco v. Darien,* 157 Conn. 548, 555, 254 A.2d 898 (1969)). While it is arguable that "claims of constitutional violations are no exception to th[e] general rule" requiring the exhaustion of administrative remedies, *see Doe v. Heintz,* 204 Conn. at 34, 526 A.2d 1318 (*citing Florentine v. Darien,* 142 Conn. 415, 426–27, 115 A.2d 328 (1955)), the court is of the view that this case falls within the exception where exhaustion of the remedy could not produce the relief sought.

The defendants argue that the plaintiffs should exhaust their administrative remedies before the Labor Board, the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), the State Election Enforcement Commission, and the State Ethics Commission. Apparently, the Labor Board has jurisdiction over the plaintiffs' claims of retaliation against their union organizing activities; the CCHRO has jurisdiction over St. George's claim of discrimination; and the State Election Enforcement Commission and the State Ethics Commission have jurisdiction over the plaintiffs' claims regarding improper "dues" paid to the Fairfield County Sheriff's Association. *See* Defendants' Memorandum in *St. George* at 17–18; Defendants' Memorandum in *Lewis* at 14–15.

As an initial matter, it bears repeating that St. George has withdrawn her claim based on Conn.Gen.Stat. § 9–333x, which prohibits corrupt practices in state elections and campaign financing.[26] It is also worth noting that both Lewis and St. George have in fact pursued—and exhausted—proceedings before the Labor Board.[27] Finally, it should be recalled that, as the defendants conceded at oral argument on their motions to dismiss, St. George is not required to exhaust her state administrative remedies prior to bringing her related state claims under the Connecticut employment discrimination statute and the Connecticut workers' compensation statute.[28]

In any event, by the defendants' own admission,[29] it appears that no single Connecticut agency has jurisdiction over all of the plaintiffs' state constitutional and common law claims. As a result, administrative exhaustion under the circumstances presented here would entail piecemeal proceedings before various state agencies. As a practical matter, such an approach hardly seems fair or efficient.

As a legal matter, in any event, administrative exhaustion is simply not required here. It appears that the Labor Board is statutorily empowered only to issue a cease and desist order and to reinstate the plaintiffs with back pay. *See* Conn.Gen.Stat. § 5–274(b). The final order of the Labor Board's December 1, 1993 Decision exemplifies the limitations of any administrative remedies available to the plaintiffs from the Labor Board.[30] The CCHRO is similarly empowered by statute to issue a cease and desist order, to reinstate St. George with back pay, and to order the reimbursement of expenses resulting from the discriminatory practice, including attorney's fees. *See* Conn.Gen. Stat. § 46a–86. Finally, the jurisdiction of the State Election Enforcement Commission and the State Ethics Commission is only remotely connected with the entirety of the plaintiffs' allegations, and, in any event, these agencies can only impose limited statutory civil penalties or damages resulting from unfair financial advantage. *See* Conn.Gen.Stat. § 9–7b (State Election Enforcement Commission) and Conn.Gen.Stat. § 1–88 (State Ethics Commission).

26. *See* note 7, *supra,* and accompanying text.

27. *See* notes 13 and 23, *supra,* and accompanying text.

28. *See* Tr. of 3/22/93 Ruling, *supra* note 2, at 5; *see* notes 6 and 8, *supra.*

29. After all, the defendants have explicitly urged the plaintiffs to exhaust their administrative remedies before no fewer than four administrative agencies.

30. The Labor Board ordered that the Fairfield County Sheriff's Department (a) offer Lewis immediate reinstatement; (b) make Lewis whole for the loss in compensation and other benefits incurred as a result of the termination of his employment; (c) post a copy of the Labor Board's December 1, 1993 Decision in a conspicuous place where Special Deputy Sheriffs customarily congregate; and (d) file a notice of compliance with the Labor Board. *See* Labor Board's December 1, 1993 Decision, *supra* note 23, at 38.

**634**

Simply put, the defendants have not pointed to any authority, nor is the court aware of any authority, which empowers any of these agencies to award damages for the intentional infliction of emotional distress, to award punitive damages, or to afford a full remedy—legal, injunctive, and declaratory—for a violation, for example, of the plaintiffs' rights under Article I, Sections 4 and 14 of the Connecticut Constitution.[31] To reiterate, the administrative remedies available to the plaintiffs do not provide for the full range of the relief sought. As a result, under the governing state law standards,[32] administrative exhaustion is not a prerequisite to these actions.

The defendants' reliance on *Doe v. Heintz, supra,* is misplaced. There, a class of indigent women had challenged the validity of a regulation issued by the defendant Commissioner of Income Maintenance. The Connecticut Superior Court struck down the regulation on state constitutional grounds, and then issued a supplemental judgment awarding attorney's fees to the named plaintiff. The defendant appealed only the supplemental judgment, and not the determination that the regulation at issue was unconstitutional. Relying on Conn.Gen.Stat. § 4–141 *et seq.,* which provide for proceedings before the Claims Commissioner where monetary relief is sought from the state, the Connecticut Supreme Court held that the plaintiff's claim for attorney's fees against the state was barred for failure to exhaust administrative remedies. Most importantly for our purposes here, the Claims Commissioner would have had no occasion to rule on the constitutionality of the regulation—a matter that had already been conclusively decided by the Connecticut courts—and the administrative proceedings could have provided the plaintiff with the full amount of the relief sought.

Here, by contrast, one or more of the administrative agencies cited by the defendants would not only have to pass on the constitutionality of the defendants' actions, but none of these agencies—either separately or in combination—could provide the plaintiffs with an adequate forum for the full recovery of the relief they seek.

Accordingly, the court finds that—inasmuch as the plaintiffs seek more than mere reinstatement with back pay, reimbursement for their expenses, and a determination that the defendants were engaged in certain prohibited practices—the pursuit of administrative remedies would be "necessarily futile." *Doe v. Heintz,* 204 Conn. at 34, 526 A.2d 1318 (citations omitted).[33] The defendants' motions for summary judgment on this ground must therefore be denied.

**C.**

■ With regard to Lewis' procedural due process claim, the defendants assert that Lewis does not have a property interest in continued employment as a Special Deputy Sheriff and that he is therefore not entitled to due process protection. The court agrees. As Justice Brennan wrote in a landmark Supreme Court decision,

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Cleveland*

---

**31.** *See* note 3, *supra.*

**32.** *See* note 25, *supra.*

**33.** The fact that the plaintiffs have in fact pursued administrative remedies before the Labor Board does not persuade the court otherwise. While it is true that Lewis did obtain a favorable judgment from the Labor Board which entitles him to reinstatement with back pay, *see* Labor Board's December 1, 1993 Decision, *supra,* note 23, at 38, this does not mean either that exhaustion is required as a matter of law or that the Labor Board afforded (or could have afforded) Lewis the full scope of the relief he now seeks before this court.

*Board of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

Furthermore, when state law "makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." *RR Village Ass'n v. Denver Sewer Corp.,* 826 F.2d 1197, 1201–02 (2d Cir.1987); *see also Schwartz v. Mayor's Comm. on the Judiciary,* 816 F.2d 54, 56 (2d Cir.1987); *Sullivan v. Town of Salem,* 805 F.2d 81, 84 (2d Cir.1986).

Moreover, "mutually explicit understandings ... do not 'create a property interest for the purposes of due process when they are contrary to the express provisions of regulations and statutes.'" *Chu v. Schweiker,* 690 F.2d 330, 334 (2d Cir.1982) (*quoting Baden v. Koch,* 638 F.2d 486, 492 (2d Cir. 1980)). *See also King v. Lensink,* 720 F.Supp. at 238; and *Zimmerman v. Board of Educ. of Town of Branford,* 597 F.Supp. 72, 77 (D.Conn.1984) ("[a] contractual provision or mutual understanding contrary to the statutory provision may give rise to a cause of action for breach of contract, but will not give rise to a protectable property interest").

Here, Conn.Gen.Stat. § 6–43,[34] is clear on its face: "special deputies shall continue to hold their office as long as the sheriff appointing them deems necessary...." The plaintiffs cannot realistically suggest that this language does not vest in the High Sheriff, defendant Mak, considerable discretion regarding the appointment and removal of Special Deputy Sheriffs. Indeed, both St. George and Lewis signed Conditions of Appointment which explicitly state that "[a]ll appointments to any office under the High Sheriff of Fairfield County are made with the understanding that such an appointment to any office may be withdrawn at any time by said Sheriff."[35]

On this record, Lewis cannot successfully rely on any property interest supposedly created by an implied contractual agreement or "mutually explicit understandings." The language of the governing statute, as well as the language of the written contractual agreement which implements the statute, clearly demonstrate that Lewis had no legitimate expectation in continued employment as a Special Deputy Sheriff. His asserted property interest rests on what is no more than a "unilateral expectation," *see Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

Accordingly, in the circumstances presented here, Lewis is not entitled to due process protection, and the defendants' motion for summary judgment on his procedural due process claim must therefore be granted.[36]

**D.**

██ Finally, the defendants argue that the plaintiffs' allegations of a civil rights conspiracy, pursuant to 42 U.S.C. §§ 1985(3) and 1986,[37] are without merit. Again, the court agrees.

To state a claim under 42 U.S.C. § 1985(3), the plaintiffs must allege that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus...." *Griffin v. Breckenridge,* 403 U.S. at 102, 91 S.Ct. at 1798. The Supreme Court has decided that "class-based" discrimination under Section 1985(3) does not include discrimination against groups based on their economic or commercial activities or status—including, for example, employee groups engaging in union-related activities. *See United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 839, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983) (holding that "economic and commercial conflicts ... are best dealt with by statutes, federal or state, specifically addressed to such problems, as well as by the

---

**34.** *See* note 14, *supra.*

**35.** These Conditions of Appointment are attached to the defendants' Statements of Material Facts (filed Aug. 23, 1993) in support of their motions for summary judgment.

**36.** It should be emphasized, however, that the authority of Mak to terminate Lewis' employ-

ment at will does not imply the authority to violate state or federal statutes or to infringe on state or federal constitutional rights. Put another way, the fact that Lewis does not have a procedural due process claim in no way affects the viability of his other claims.

**37.** *See* note 15, *supra.*

general law proscribing injury to persons and property").[38]

The plaintiffs seek to distinguish *Carpenters* by emphasizing that state action is present here. The plaintiffs argue that *Carpenters* bars only purely *private* conspiracies resting on anti-union bias. Unfortunately for the plaintiffs, this argument does not comport with the language of the *Carpenters* decision.

In *Carpenters,* the Supreme Court reversed the Court of Appeals not only because no state action was involved, but also on the *independent* ground that there was no "racial, or perhaps otherwise class-based, invidiously discriminatory animus." In other words, state action and an invidiously discriminatory animus are cumulative, rather than alternative, requirements.

> The Court of Appeals ... erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment. Because of that holding the Court of Appeals found it unnecessary to determine whether [the defendants'] action could be sustained under § 1985(3) as involving a conspiracy to deprive [the plaintiffs] of rights, privileges, or immunities under state law or those protected against private action by the Federal Constitution or federal statutory law. Conceivably, we could remand for consideration of these possibilities, or we ourselves could consider them. *We take neither course, for in our view the Court of Appeals should also be reversed on the dispositive ground that § 1985(3)'s requirement that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," ... was not satisfied in this case.*

*Carpenters,* 463 U.S. at 833–34, 103 S.Ct. at 3359 *(quoting Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798) (emphasis supplied).

While the plaintiffs' factual allegations may indeed have substantial merit, there is simply not enough on this record, under the governing Supreme Court precedent, to sustain a claim under 42 U.S.C. § 1985(3). Without

the type of animus that triggers Section 1985(3), state action will not suffice.

Accordingly, the defendants' motions for summary judgment on the plaintiffs' claims under 42 U.S.C. §§ 1985(3) and 1986 must be granted.

## CONCLUSION

Based on the record and for the reasons stated above, the defendants' Motion for Summary Judgment in *St. George* (filed Aug. 23, 1993) (doc. # 34) and the defendants' Motion for Summary Judgment in *Lewis* (filed Aug. 23, 1993) (doc. # 21) are each hereby GRANTED in part and DENIED in part in accordance with this Ruling.

To summarize:

(1) The defendants' motions for summary judgment on the plaintiffs' claims pursuant to the Connecticut free speech act, Conn.Gen. Stat. § 31–51q, and the Connecticut workers' compensation statute, Conn.Gen.Stat. § 31–290a, are hereby GRANTED inasmuch as the court declines, pursuant to 28 U.S.C. § 1367(c)(1), to exercise supplemental jurisdiction over these claims. Accordingly, Counts IV and XI in *St. George* and Count IV in *Lewis* are hereby DISMISSED, without prejudice.

(2) The defendants' motion for summary judgment in *St. George* on the plaintiff's claim pursuant to the Connecticut employment discrimination statute, Conn.Gen.Stat. § 46a–71, is hereby DENIED.

(3) The defendants' motions for summary judgment in *St. George* and *Lewis* on the plaintiffs' state constitutional and common law claims are hereby DENIED.

(4) The defendants' motion for summary judgment in *Lewis* on the plaintiff's procedural due process claim is hereby GRANTED.

(5) The defendants' motions for summary judgment in *St. George* and *Lewis* on the plaintiffs' claims pursuant to 42 U.S.C. §§ 1985(3) and 1986 are hereby GRANTED.

---

**38.** *See also Lajoie,* 837 F.Supp. at 39–40.

(6) The plaintiffs in these actions shall file, by no later than February 4, 1994, amended complaints in full conformity with this ruling.

It is so ordered.